DODSON, CHARLES W., Associate Judge.
This is an appeal and cross-appeal from a final order of the Public Employees Relations Commission (PERC), dismissing an unfair labor practice charge, but denying attorney’s fees and costs to the Sheriff of Orange County. We affirm PERC’s final order in all respects, but write only to discuss the merits of its order dismissing the unfair labor practice charge.
At all times relevant to this case, the Florida Police Benevolent Association (PBA) was the certified bargaining agent for units of (1) full-time law enforcement officers and (2) full-time supervisory law enforcement personnel employed by the Sheriff of Orange County. Since the 1980’s and until fiscal year 2009-2010, these employees were afforded merit step pay increases, provided they met certain eligibility requirements.
In February 2009, Orange County issued its budget guidelines for fiscal year 2009-2010. The County advised all agencies, including the Sheriffs Office, not to budget any wage increases for that fiscal year. Accordingly, in April 2009 the Sheriff submitted his budget to the County without including funding for merit step pay increases. No such increases have been paid since October 1, 2009. The employees have been frozen in their steps since the September 30, 2009, expiration of the parties’ collective bargaining agreements.
On November 10, 2009, the PBA filed an unfair labor practice charge with PERC, alleging the Sheriff violated Section 447.501(l)(a) and (c), Florida Statutes (2009), by unilaterally discontinuing the merit step pay increases during the hiatus period between the expiration of the parties’ previous agreement and a successor agreement. The parties agreed the merit step pay increases are “wages” for which the Sheriff cannot unilaterally alter the status quo during negotiations in the absence of certain circumstances. The parties also agreed those circumstances are not present here.
PERC appointed a hearing officer. After a hearing, the hearing officer issued a recommended order concluding the Sheriff violated Section 447.501(l)(a) and (c), by failing to pay merit step pay increases after the expiration of the collective bargaining agreements. The hearing officer concluded the status quo was established by the Sheriffs past practice of affording merit step pay increases since the 1980’s. PERC disagreed, finding the hearing officer should have determined the status quo based on the explicit terms of the collective bargaining agreements.
Following the expiration of a collective bargaining agreement, an employer is prohibited from unilaterally altering the status quo of wages, hours, and the terms and conditions of employment. See City of Winter Springs v. Winter Springs Prof'l, 885 So.2d 494, 498 (Fla. 1st DCA 2004); Nassau Teachers Ass’n, FTP-NEA v. Sch. Bd. of Nassau Cnty., 8 FPER ¶ 13206 (1982); Duval Teachers United v. Duval *402 Cnty. Sch. Bd., 6 FPER ¶ 11149 (1980). The status quo can be established either by an explicit contract provision or by an existing past practice. See Central Fla. Prof'l Fire Fighters, Local 2057 v. Bd. of Cnty. Comm’rs of Orange Cnty., 9 FPER ¶ 14872 (1988). When terms or conditions of employment are in a contractual provision, the status quo is determined by reference to the precise wording of the relevant contractual provision. See Royal Palm Bch. Prof'l Fire Fighters Ass’n, IAFF, Local 2886 v. Vill. of Royal Palm Bch., 14 FPER ¶ 19304 at 672-73 (1988). If the contract provision is explicit, no extrinsic evidence of past practice to determine the status quo will be considered. Id. at 673. Instead, the employees’ reasonable expectations as to the continuation of certain benefits should properly be founded upon the precise contractual language, rather than upon a past practice. Id.
In the present case, Article 25, Section 1(D) of the collective bargaining agreements states:
All future wage adjustments, if any, shall be negotiated among the parties pursuant to Article 33, Duration.
Article 33 of the agreements states:
This agreement shall be effective September 23, 2007, and shall continue in full force and effect until September 30, 2009. Either party may notify the other in writing on or before April 30, 2009 of its intent to terminate or modify this agreement in which event the parties shall negotiate in an attempt to reach a successful agreement in accordance with applicable law.
The precise wording of the agreements controls in this case. As of the filing of the stipulated record before the hearing officer, the parties were still negotiating the successor agreements and had not agreed upon any wage adjustments. Consequently, based on the clear language in Articles 25 and 33, PERC ruled “the affected bargaining unit members could not objectively or reasonably expect to receive any merit pay increases after the expiration of the contracts” on September 30, 2009.
The clarity in the contractual provisions of the parties’ collective bargaining agreements distinguishes this case from our recent decision in Communications Workers of America, AFL-CIO, CLC v. City of Gainesville, 65 So.3d 1070 (Fla. 1st DCA 2011). In that case, the collective bargaining agreement made no mention whatsoever of the health insurance benefits in dispute, and PERC rejected the hearing officer’s ruling that the City had engaged in unfair labor practices by refusing to bargain over changes it had made to health insurance benefits for its employees upon retirement. Because the parties’ collective bargaining agreements did not address the issue, we held the labor unions were free to show, as a factual matter, that the City’s furnishing the benefits to its employees amounted to an established past practice. See id. at 1074 (“The status quo depends both on the provisions of collective bargaining agreements and on the content of established past practices.”). Since we were persuaded the hearing officer’s finding of fact was correct, we reversed PERC’s ruling. Id. at 1074.
However, in the present case PERC correctly concluded the hearing officer arrived at an erroneous conclusion of law by determining the status quo based on extraneous evidence of the parties’ past practice, rather than on the explicit terms embodied in the bargaining agreements. See Escambia Cnty. Educ. Ass’n, FTP-NEA v. Sch. Bd. of Escambia Cnty., 10 FPER ¶ 15160 at 301 (1984). Those terms limited the employees’ merit step pay increases, *403 “if any,” following the expiration of the agreements, to those subsequently negotiated by the parties.
PERC’s final order is AFFIRMED.
BENTON, C.J., and LEWIS, J., concur.